IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |  |
|---|---|---|
| WILLIE LEE POOLE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 2:05-CV-774** |
| | ) | |
| AMERICAN INTERNATIONAL | ) | |
| GROUP, INC.; et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

COME NOW Defendants American General Financial Services of Alabama, Inc. (improperly designated as American General Finance Inc. in the complaint), as successor to American General Finance, Inc., Merit Life Insurance Company, and Yosemite Insurance Company (hereinafter collectively referred to as "Defendants"), by and through their undersigned counsel, appearing specially so as to preserve any and all defenses available under Rule 12 of the Federal Rules of Civil procedure, and specifically preserving the right to seek arbitration pursuant to 9 U.S.C. § 1, *et seq.*, and hereby submit this opposition to Plaintiff's motion to remand. In support thereof, Defendants state as follows:

## I. INTRODUCTION

Plaintiff commenced the present action on July 1, 2005 by filing a complaint in the Circuit Court of Montgomery County, Alabama, alleging certain putative misconduct with respect to the refinancing of consumer loans and the sale of credit insurance in connection with said loans. Upon commencement, this lawsuit immediately joined the long line of boilerplate consumer finance actions recently filed by Plaintiff's counsel in Alabama and Tennessee. These

1439581

Alabama and Tennessee matters, in turn, follow on the heels of innumerable lawsuits Plaintiff's counsel has filed in Mississippi over the past several years, each fraudulently joining non-diverse defendants for the purpose of avoiding diversity jurisdiction.[1]   Federal courts in Mississippi, recognizing the attempt by the plaintiffs' bar to avoid diversity jurisdiction by fraudulently joining such defendants, have repeatedly denied remand, exercised diversity jurisdiction, and ultimately granted summary judgment for the defendants in like matters.[2]

In the present action, Plaintiff has concocted a slightly different set of allegations with respect to a loan obtained in 1990 that are specially designed to defeat Defendants' valid fraudulent joinder argument and avoid the deserved fate of the aforementioned Mississippi plaintiffs.  (See Plaintiff's Complaint, ¶¶ 12-22).  Specifically, Plaintiff asserts that Kathie Rowell and Latanya Kennedy (the "Non-Diverse Defendants") misrepresented that credit insurance was a "good deal" and that purchasing such insurance would improve both his credit score and his chances of being approved for the loans in question. (Plaintiff's Complaint, ¶¶ 12, 15).  Moreover, Plaintiff alleges that the Non-Diverse Defendants misrepresented to him that refinancing and consolidating prior debt would save him money. (Plaintiff's Complaint, ¶¶ 13-14).  Based on these allegations, Plaintiff appears to assert the following individual causes of action with respect to loans obtained more that **fifteen years ago** on June 15, 1990: (1) fraudulent misrepresentation and/or concealment; (2) negligent misrepresentation; (3) negligent and/or wanton hiring, training, and supervision; and (4) breach of fiduciary duties.

---

[1]  The complete list of the lawsuits filed by Plaintiff's counsel against Defendants in Mississippi, Tennessee, and Alabama is too voluminous to include in this Memorandum.  As a result, Defendants have set forth the list in a separate document, attached hereto as Exhibit "A."

[2]  The consumer finance lawsuits in Mississippi in which federal courts have denied remand, and in some instances granted summary judgment for the defendants, is too voluminous to include in this Memorandum.  As a result, Defendants have set forth the list in a separate document, attached hereto as Exhibit "B."

On or about August 11, 2005, Defendants removed the present action to this Court on diversity jurisdiction grounds under 28 U.S.C. § 1332(a).    In their Notice of Removal, Defendants specifically demonstrated that the Non-Diverse Defendants have been fraudulently joined and that, accordingly, diversity jurisdiction exists under 28 U.S.C. § 1332(a).  On or about August 29, 2005, Plaintiff filed a Motion to Remand wherein he argued that the Non-Diverse Defendants were properly joined and that Defendants failed to show that the amount in controversy requirement had been satisfied.    As demonstrated in detail below, Plaintiff's contentions are completely unfounded, and his Motion to Remand is due to be denied.[3]

---

[3] It bears noting that the present action is distinguishable from those previously remanded in Mary Cope v. American International Group, Inc., et al., Civil Action No. 3:05-cv-751-WHA; Stephanie Mayberry v. American International Group, Inc., et al., Civil Action No. 3:05-cv-773-WHA; and Joe T. Smith v. American International Group, Inc., et al.  Specifically, this matter involves a loan that is much older than those at issue in Cope, Mayberry, and Smith, which gives rise to the application of laches in this matter, and far greater weight to the statute of limitations defense.  Moreover, Defendants' opposition to remand in the present action contains several additional arguments establishing that Plaintiff has no possibility of recovery against the Non-Diverse Defendants.  As such, this Court's remand of the Cope, Mayberry, and Smith matters should have no bearing on its analysis of the present action.

Similarly, the present action is distinguishable from those previously remanded in Tony and Dorothy Turner v. American International Group, Inc., et al., Civil Action No. 3:05-cv-753-MHT; Bernice Poole-Reese v. American International Group, Inc., et al., Civil Action No. 3:05-cv-750-MHT; and James Poole v. American International Group, Inc., et al., Civil Action No. 3:05-cv-749-MHT.  These three matters were ostensibly remanded under the "common defense" doctrine -- an exception whereby a finding of fraudulent joinder may not be based on a defense that is common to all defendants and necessarily dispositive of all claims against all defendants.  In actuality, however, the Court predicated its remand of the above matters on the fact that Defendants failed to respond to Plaintiff's "common defense" argument, not that the argument itself was necessarily applicable.  Defendants currently have pending motions to alter or vacate the remand orders in Turner, Poole-Reese, and Poole on the grounds that they were not given an opportunity to address the "common defense" argument.  In the present action, however, Defendants affirmatively and conclusively responded to Plaintiff's "common defense" argument in their September 30, 2005 response to Plaintiff's motion to alter, amend, or vacate this Court's order granting Defendants remand-related discovery.  There, Defendants demonstrated that the "common defense" exception has not been adopted by the Eleventh Circuit and that it has been significantly narrowed so that it affects only a very small class of cases, a class of cases that does not include the present action.  As such, this Court's remand of the Turner, Poole-Reese, and Poole matters should have no bearing on its analysis of the present action.

## II. <u>ARGUMENT</u>

Federal district courts have jurisdiction over civil actions where there is complete diversity among the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Though diversity jurisdiction generally mandates that "every plaintiff . . . be diverse from every defendant," <u>Tapscott v. MS Dealer Service Corp.</u>, 77 F.3d 1353, 1355 (11th Cir. 1996), this requirement is abandoned in instances of fraudulent joinder. In fact, federal courts in Alabama have specifically held that "[w]hen a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether a case is removable based upon diversity jurisdiction." <u>Bullock v. United Benefit Ins. Co.</u>, 165 F. Supp. 2d 1255, 1256 (M.D. Ala. 2001)(citing <u>Tapscott</u>, 77 F.3d at 1360.).

Fraudulent joinder occurs where "there is no possibility that the Plaintiff can prove a cause of action against the resident (non-diverse) defendant." <u>Fowler v. Provident Life and Accident Insurance Co.</u>, 256 F. Supp. 2d 1243, 1246 (N.D. Ala. 2003)(citing <u>Triggs v. John Crump Toyota, Inc.</u>, 154 F.3d 1284, 1287 (11th Cir. 1998)). That having been said, it is clear that the Non-Diverse Defendants have been fraudulently joined in the present action as Plaintiff's claims against them are time-barred by the applicable statute of limitations, barred by the doctrine of laches, and substantively meritless. Thus, their Alabama citizenship should be disregarded, creating complete diversity between the Plaintiff and all properly joined Defendants. In addition, Defendants have provided more than enough evidence to support their contention that the amount in controversy exceeds $75,000 in the present action. As such, both diversity jurisdiction requirements have been satisfied herein, and Plaintiff's Motion to Remand is due to be denied.

A.    **The Non-Diverse Defendant Latonya Kennedy Has Been Fraudulently Joined Because She Was Not Employed by Defendants at the Time of Plaintiff's June 15, 1990 Loan.**

Latonya Kennedy could not have possibly made any misrepresentations in connection with Plaintiff's June 15, 1990 loan because she did not even begin working for American General until December of 1997. (See the Affidavit of Latonya Kennedy, attached hereto as Exhibit "C"). In fact, a perfunctory review of Plaintiff's June 15, 1990 loan documents quickly reveals that Latonya Kennedy had no involvement in said loan. (See Plaintiff's loan documents, attached hereto as Exhibit "D"). As such, it is patently obvious that Plaintiff cannot possibility recover against Latonya Kennedy and that she has been fraudulently joined in the present action. Even if this were not the case, which it is, the following sections offer a multitude of additional reasons why both Latonya Kennedy and Kathie Rowell have been fraudulently joined as to all claims herein.

B.    **The Non-Diverse Defendants Have Been Fraudulently Joined Because Plaintiff's Claims Against Them are Time-Barred by the Applicable Statute of Limitations.**

1.    **Plaintiff's Fraud-Based Claims are Time-Barred.**

Plaintiff's fraud-based claims against the Non-Diverse Defendants are governed by a two-year statute of limitations. See, e.g., Ex parte American General Finance, Inc., 795 So. 2d 685, 686-87 (Ala. 2000); Lott v. Tarver, 741 So. 2d 394, 397 (Ala. 1999); Liberty Nat'l Life Ins. Co. v. Parker, 703 So. 2d 307, 308 (Ala. 1997). Because Plaintiff's claims relate to a loan obtained in 1990, said claims are clearly time-barred on their face by this two-year statute of limitations. Plaintiff presumably seeks to avoid this bar under the "savings clause" contained in ALA. CODE § 6-2-3, which states that "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two

years within which to prosecute his action." As demonstrated below, however, the "saving clause" does not apply in the present action to salvage Plaintiff's claims against the Non-Diverse Defendants.

              **a.**        **Plaintiff Has Failed to Allege the Facts and/or Circumstances that Prevented Him From Discovering the Alleged Fraud Within the Limitations Period.**

The Alabama Supreme Court has consistently held that where a complaint alleging fraud is facially time-barred, said complaint cannot be salvaged by the "savings clause" unless it **specifically** alleges the facts and/or circumstances that prevented the plaintiff from discovering the alleged fraud within the limitations period. See Smith v. National Sec. Ins. Co., 860 So.2d 343, 347 (Ala. 2003)("[plaintiff's] complaint 'fails to allege any of the facts or circumstances by which the appellees concealed the cause of action or injury,' and 'fails to allege what prevented [plaintiff] from discovering facts surrounding the [fraud]. . . .' [Plaintiff's] general reference to the alleged fraud as being 'of a continuing nature' is wholly lacking in specificity and equally deficient as a means of saving the action from the bar of the statute of limitations appearing on the face of the complaint.")(citations omitted); Miller v. Mobile County Board of Health, 409 So.2d 420 (Ala. 1981)(same). Indeed, just last month, the Circuit Court of Lee County, Alabama granted summary judgment for these very Defendants in a case filed by Plaintiff's counsel, wherein it noted that "a Plaintiff **MUST** plead certain issues before they can be granted the extension of the 2 year statute of limitations for fraud established by § 6-2-38(l), *Code of Alabama*, (1975) as amended." See the Court's Order in American General Finance, Inc. v. Calvin Quarles, Jr. and Elsie Quarles, Case No. CV-04-380, at p. 18 (Circuit Court of Lee County, Ala. January 24, 2006)(emphasis in original)(attached hereto as Exhibit "E"). The Court found in Quarles that the plaintiffs failed to establish in their complaint and subsequent pleadings "what prevented them from discovering the alleged fraud before the bar of the statute was

complete or any other issues which are required before the provisions of the 'savings clause' provided by § 6-2-3, *Code of Alabama*, (1975), as amended, to be provided to them." (Ex. E, at pp. 18-19).

As in Quarles, Plaintiff in the present action has utterly failed to demonstrate what prevented him from discovering the alleged fraud before the statute of limitations expired over thirteen years ago, noting only that he "discovered the fraud within two (2) years of filing this lawsuit," (Plaintiff's Complaint, ¶ 19), but failing to provide the specific facts and circumstances that prevented him from discovering the alleged fraud within the limitations period. As such, Plaintiff cannot invoke the "savings clause" under ALA. CODE § 6-2-3, and his fraud-based claims against the Non-Diverse Defendants are time-barred by the applicable statute of limitations.

> **b.**    **Plaintiff Received Documents in Connection With His Loans That Provided Notice of His Alleged Fraud Claims.**

As demonstrated above, fraud claims accrue and the two year limitations for such claims begins to run "when the plaintiff discovers the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care." Fabre v. State Farm Mut. Auto. Ins. Co., 624 So. 2d 167, 168 (Ala. 1993). Accord Lott v. Tarver, 741 So. 2d at 397; K & C Dev. Corp. v. AmSouth Bank, N.A., 597 So. 2d 671, 676 (Ala. 1992). Contrary to Plaintiff's contentions, however, fraud is not discoverable only in those instances where documents received directly contradict representations made. Rather, "the limitations period begins to run when the plaintiff was privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.'" Gilmore v. M & B Realty Co., L.L.C., et al., 895 So.2d 200, 209 (Ala. 2004) (quoting Auto-Owners Ins. Co. v. Abston, 822 So.2d 1187, 1195 (Ala. 2001)). See also Jefferson County Truck Growers Ass'n

v. Tanner, 341 So.2d 485, 488 (Ala. 1977) ("It is sufficient to begin the running of the statute of limitations that facts were known that would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry."). Indeed, the Middle District of Alabama in Bullock v. United Ben. Ins. Co., 165 F.Supp.2d 1255, 1258 (M.D. Ala. 2001)(emphasis added) stated that fraud claims accrue upon the "receipt of a document or contract alerting the plaintiff to the **possibility** of fraud. . . ."

In the present action, Plaintiff advances a variety of allegations specially designed to avoid a finding that he should have discovered his fraud claims upon receiving his loan documents. (See Plaintiff's Complaint, ¶¶ 12-22). Specifically, Plaintiff asserts that the Non-Diverse Defendants misrepresented that credit insurance was a "good deal" and that purchasing such insurance would improve both his credit score and his chances of being approved for the 1990 loan in question. (Plaintiff's Complaint, ¶¶ 12, 15). Plaintiff further alleges that the Non-Diverse Defendants misrepresented to him that refinancing prior loans would save him money. (Plaintiff's Complaint, ¶¶ 13-14). Plaintiff, however, signed loan documents in connection with his 1990 loan that contained language at odds with these alleged oral statements, and from which Plaintiff should have discovered his alleged fraud claims. (See D).

Plaintiffs' June 15, 1990 loan documents disclosed all of the relevant financial terms for said loan, including but not limited to, the amount financed, the finance charge, the total of payments, the total number of payments, the interest rate, and the amount of monthly payment. (See id.). This was more than enough information for Plaintiff to determine whether refinancing a prior loan would save him money, especially since Plaintiff also presumably had access to the financial terms of any prior loan refinanced. Similarly, Plaintiff's 1990 loan clearly disclosed the premiums for all insurance products purchased therein. (See id.). This was more than enough

information for Plaintiff to determine whether purchasing Defendants' insurance products was, in fact, a "good deal." As such, Plaintiff should have discovered any claims related to the Non-Diverse Defendants' alleged misrepresentations that refinancing prior loans would save him money and that purchasing credit insurance was a good deal at the time of his 1990 loan.[4]

Regarding the optional nature of credit life and/or credit disability insurance, Plaintiff's 1990 loan documents specifically stated that such insurance is "not required to obtain credit and will not be provided unless you sign and agree to pay the additional cost." (Id.). In addition, his 1990 loan documents provided that credit life and/or credit disability insurance may be canceled within fifteen days from the date of the loan and that "[u]pon cancellation, a full cash refund of all credit insurance premiums will be made." (Id.).

The above insurance disclosures clearly "alert[ed] Plaintiff to the possibility of fraud" regarding the Non-Diverse Defendants' alleged misrepresentations that purchasing credit insurance would improve both his credit score and his chances of being approved for the loans in question even though they did not directly contradict said misrepresentations. See Bullock, 165 F.Supp.2d at 1258. In fact, in Sealey v. CitiGroup, Inc., et al., Civil Action No. 03-B-3003-W (N.D. Ala. Aug. 31, 2004)(attached hereto as Exhibit "F")(emphasis added), the Honorable Judge Sharon Lovelace Blackburn of the United States District Court for the Northern District of Alabama specifically held that **"plaintiffs could not believe that the purchase of credit**

---

[4] As demonstrated herein below at pgs. 13-15, Plaintiff should have also discovered any claims related to the Non-Diverse Defendants' alleged misrepresentations that refinancing prior loans would save him money and that purchasing credit insurance was a good deal in 1990 because said misrepresentations were little more than sales talk or "puffery." See BellSouth Mobility, Inc. v. Cellulink, Inc., 814 So.2d 203, 217 (Ala. 2001); Fincher v. Robinson Brothers Lincoln Mercury, Inc., 583 So.2d 256, 259 (Ala. 1991); Gable v. Boles, 718 So.2d 68, 70-71 (Ala. Civ. App. 1998). Individuals do not have the right to act upon such sales talk and any misrepresentations resulting therefrom will not support a claim of fraud. Fincher, 583 So.2d at 259.

**insurance improved their chances for loan approval if (1) the credit life insurance was not required to obtain the loan and even if they purchased such insurance, (2) they could cancel the insurance at any time.**" The same naturally holds true with respect to the similar misrepresentation that purchasing credit insurance improves credit scores/ratings. As such, Plaintiff should have discovered any claims related to the Non-Diverse Defendants' alleged misrepresentations that purchasing credit insurance would improve both his credit score and his chances of being approved for the loans in question at the time he obtained his 1990 loans.

Because Plaintiff had notice of his fraud claims against the Non-Diverse Defendants in 1990, said claims accrued, and the statute of limitations began to run, in 1990. Fabre v. State Farm Mut. Auto. Ins. Co., 624 So.2d 167, 168 (Ala. 1993). Accord Lott v. Tarver, 741 So.2d at 397; K & C Dev. Corp. v. AmSouth Bank, N.A., 597 So.2d 671, 676 (Ala. 1992). Plaintiff, however, did not file the present action until July 1, 2005, **more than fifteen years** after his 1990 loan. As such, Plaintiff's fraud claims against the Non-Diverse Defendants are time-barred by the applicable two year statute of limitations.

## 2.    Plaintiff's Negligence-Based Claims are Time-Barred.

Plaintiff's negligence-based claims against the Non-Diverse Defendants are similarly governed by a two year statute of limitations.[5] The law in Alabama is well settled that causes of action for negligence and wanton misconduct accrue, and the two-year statute of limitations begins to run, as soon as "the plaintiff can first maintain the action." Booker v. United American Ins. Co., 700 So. 2d at 1339. Accord Ex parte Burnham, Klinefelter, Halsey, Jones & Cater, P.C., 674 So. 2d 1287, 1289 (Ala. 1995); Cofield v. Smith, 495 So. 2d 61, 62 (Ala. 1986). A

---

[5] Because no specific limitations period is prescribed for Plaintiff's negligence claims, they are also governed by the general, two year statute of limitations period outlined in ALA. CODE § 6-2-38(l).

plaintiff is entitled to "maintain an action" when the party "suffers an injury or a loss or damage." Jones v. Blanton, 644 So. 2d 882, 887 (Ala. 1994)  Thus, the statute begins to run at this initial point "regardless of whether the full amount of damage is apparent at the time of the first injury. Booker, 700 So. 2d at 1339.

In Booker, plaintiffs brought suit against an insurance company and others for negligence, wanton misconduct, fraudulent misrepresentation, and fraudulent suppression arising out of their purchase of an insurance policy after the agent "made various misrepresentations to them."  700 So. 2d at 1334.  The trial court granted the defendants' motion for summary judgment on all of plaintiffs' claims.  Id.  The Alabama Supreme Court affirmed the trial court's judgment in its entirety.  Id. at 1340.  In holding that the plaintiffs' negligence and wanton misconduct claims were barred by the two-year limitations period, the Supreme Court stated:

> It is well settled that a negligence cause of action accrues when the plaintiff can first maintain the action, regardless of whether the full amount of damage is apparent  at the time of the first injury.  In Henson, 621 So. 2d at 1271, 1274, this Court held that the plaintiff's completion of an application for a health insurance policy started the running of the two-year limitations period for a negligence action. . . .  In this case, as in Henson, 621 So. 2d at 1274, . . . any negligence or wantonness on the part of Stone or United American occurred, at the latest, in May 1991, when the Bookers signed the application and wrote the check for the policy. Thus, their claims accrued in May 1991.  Because the Bookers filed their complaint in August 1993 — over two years after their claims accrued — their negligence and wantonness claims are time-barred.

Id. at 1339-40.

In the present action, Plaintiff alleges that the Non-Diverse Defendants' negligence and wanton conduct resulted in, among other things, his having to pay for additional interest, insurance, and fees. (See Plaintiff's Complaint, ¶ 26).  These alleged injuries were first incurred at the time of his 1990 loan closing.  As such,  Plaintiff's negligence-based claims against the

Non-Diverse Defendants accrued, and the statute of limitations began to run, in 1990 because it was at that time that Plaintiff would have first suffered a legal injury for which he would have been entitled to maintain a cause of action. See Booker, 700 So. 2d at 1339; Jones v. Blanton, 644 So. 2d at 887. Plaintiff, however, did not file the present action until July 1, 2005, **more than fifteen years** after his 1990 loan. As such, Plaintiff's negligence-based claims against the Non-Diverse Defendants are time-barred by the applicable two year statute of limitations.

### C.    The Non-Diverse Defendants Have Been Fraudulently Joined Because Plaintiff's Claims Against Them are Barred by the Doctrine of Laches.

Even if the Court finds that Plaintiff's claims against the Non-Diverse Defendants survive the above statute of limitations analysis, said claims are barred by the equitable doctrine of laches. See Ford v. Jackson Square, Ltd., 548 So.2d 1007, 1015 (Ala. 1989)("[Laches] operates independently of any statute of limitations."). Laches is defined as "neglect to assert a right or a claim that, taken together with a lapse of time and other circumstances causing disadvantage or prejudice to the adverse party, operates as a bar." Id. at 1014. In short, it is "designed to prevent unfairness to a defendant due to a plaintiff's delay in filing suit." Id. at 1014-15. "Classic, examples of undue prejudice, for purposes of determining the applicability of the doctrine of laches, include the unavailability of witnesses, changed personnel, and the loss of pertinent records." Ex parte Grubbs, 542 So.2d 927, 929 (Ala. 1989)(citing Equal Employment Opportunity Commission v. Dresser Industries, Inc., 668 F.2d 1199 (11th Cir. 1982)).

Each of these indicia of prejudice exists in the present action. Specifically, the records that Defendants have been able to locate for Plaintiff's 1990 loan appear incomplete, which significantly hampers their ability to ascertain the facts surrounding said loan. Moreover, while Kathie Rowell has declared that she did not generally make the misrepresentations alleged in the present action, she has stated that, given the amount of time that has passed, she cannot testify

with any specificity regarding Plaintiff's 1990 loans. (See Affidavit of Kathie Rowell, attached hereto as Exhibit "G"). As such, the testimony of one of the most important witnesses in this action has been compromised by the more than fifteen year time lapse. Finally, there have been numerous personnel changes at the Auburn branch where Plaintiff obtained his loans since 1990. In fact, none of the individuals employed by Defendants at the Auburn branch in 1990 are employed there today. (See the Affidavit of Robert Ritter, attached hereto as Exhibit "H").[6]

Given the above, it is clear that the amount of time that has passed since 1990 has resulted in the loss of pertinent records, memory loss for some of the most important witnesses, and a significant change in personnel. It is equally clear that these events severely prejudice the Non-Diverse Defendant's ability to defend against Plaintiff's claims. As such, the doctrine of laches applies in the present action to bar Plaintiff's claims against the Non-Diverse Defendants.

### D. The Non-Diverse Defendants Have Been Fraudulently Joined Because Plaintiff's Claims Against Them Fail as a Matter of Law.

In addition to the procedural bars outlined above, Plaintiff cannot substantively prove his claims against the Non-Diverse Defendants for the following reasons and, as such, said Defendants have been fraudulently joined in the present action.

#### 1. Plaintiff's Claims Related to the Non-Diverse Defendants' Alleged Statement that Consolidating Debt Saves Money Fail as a Matter of Law Because Plaintiff Did Not Consolidate Debt in Connection With the Loans at Issue.

In his Complaint, Plaintiff alleges that the Non-Diverse Defendants advised him that he would save money if he paid off his other outstanding debts and consolidated them with his 1990 loan. (Plaintiff's Complaint, ¶ 13). Significantly, however, the Plaintiff's 1990 loan documents

---

[6] Due to unforeseen circumstances, Defendants were unable to get a signed copy of Exhibit H prior to the deadline for filing this opposition. Defendant will file a supplement to this opposition during the week of February 27, 2006 and include this signed copy of Exhibit H.

suggest that Plaintiff did not pay off any non-American General debt with his 1990 loan. As such, it is clear that Plaintiff did not detrimentally rely upon the Non-Diverse Defendants' alleged misrepresentation regarding consolidation of other debt, a prerequisite for any fraud-based claim. See Environmental Waste Control, Inc. v. Browning-Ferris Industries, Inc., 711 So.2d 912, 916 (Ala. 1997)("'Fraud consists of [a] false representation of a material fact that another party relies upon to his or her detriment.'")(quoting Harmon v. Motors Ins. Corp., 493 So.2d 1370, 1373 (Ala. 1986)).    Likewise, the Non-Diverse Defendants' alleged misrepresentation regarding consolidation of other debt did not proximately cause any injury or damage to Plaintiff, a prerequisite for any negligence-based claim. See Zanaty Realty, Inc. v. Williams, --- So.2d ----, 2005 WL 3082791, at *3 (Ala. 2005)(it is well-established that in order to prove a claim of negligence the duty breached must proximately cause injury or damage to the plaintiff.)(citations omitted).

Based on the foregoing, it is evident that Plaintiff's claims related to the Non-Diverse Defendants' alleged misrepresentation that he would save money if he paid off his other outstanding debts and consolidated them with his 1990 loan fail as a matter of law.

> **2.    Plaintiff's Claims Related to the Non-Diverse Defendants' Alleged Misrepresentations that Purchasing Credit Insurance is a Good Deal and that Refinancing Prior Loans Saves Money are Not Actionable Because Said Misrepresentations are Sales Talk or Puffery.**

The Alabama Supreme Court has long held that a claim for fraud must be based on "representations of fact and not mere statements of opinion amounting to nothing more than sales talk or 'puffery.'"   Gable v. Boles, 718 So.2d 68, 70-71 (Ala. Civ. App. 1998).   See also BellSouth Mobility, Inc. v. Cellulink, Inc., 814 So.2d 203, 217 (Ala. 2001)(same); Fincher v. Robinson Brothers Lincoln Mercury, Inc., 583 So.2d 256, 259 (Ala. 1991)("[S]tatement of

opinion amounting to nothing more than 'puffery' . . . are not statements concerning material facts upon which individuals have a right to act and, therefore, will not support a fraud claim.").

The Court has repeatedly found that vague representations related to the expected performance and condition of a product constitute such sales talk and are not actionable under a fraud theory.    See Scoggin v. Listerhill Employees Credit Union, 658 So.2d 376 (Ala. 1995)(seller's statements that a vehicle was "a good car" or was "in good shape" were deemed sales talk and/or puffery.); Hughes v. Hertz Corp., 670 So.2d 882 (Ala. 1995)(seller's statement that vehicle was a "fine car" was not a misrepresentation of material fact but a mere statement of opinion.); Young v. Serra Volkswagen, Inc., 579 So.2d 1337 (Ala. 1991)(statement that a vehicle "was as good as a new car" constituted mere sales talk or puffery.); Pell City Wood, Inc. v. Forke Bros. Auctioneers, Inc., 474 So.2d 694 (Ala. 1985)(statement that trucks were "in good condition" and that "the trucks are ready to work tomorrow" was auctioneer's opinion and did not rise to the level of express warranty.).

The Court has also found that vague and ill-defined promises are not the type of statements that will support a fraud claim.    See Cellulink, 814 So.2d at 217 (corporation's prior statement to a terminated agent that it was "committed to its agents" was puffery and would not support a fraud claim.); American Pioneer Life Ins. Co. v. Sherrard, 477 So.2d 287, 291 (Ala. 1985)(underwriter's representation to an investor that his idea for a combined annuity/mortgage protection project was the underwriter's "number one priority" was mere puffery and would support a fraud claim.).

Given the above, the Non-Diverse Defendants' alleged representation that purchasing credit insurance was a "good deal" and "offered great value and protection" is clearly a statement of opinion and, as such, is not actionable under a fraud theory.    Similarly, the Non-Diverse

Defendants' alleged representation that refinancing prior loans would be the "best way for [Plaintiff] to save money" is a vague and ill-defined promise that cannot possibly support a fraud claim. As such, Plaintiff's claims related to these alleged misrepresentations are nothing more than sales talk or puffery and, consequently, cannot support a cause of action in fraud.

### 3. Plaintiff's Fraudulent Misrepresentation Claims Fail as a Matter of Law for Want of Reasonable Reliance.

In Alabama, recovery under a fraud theory necessitates a showing that the plaintiff "reasonably relied" upon the alleged misrepresentations. See Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997). Under this standard, "[i]f the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts," then the plaintiff's reliance on the alleged misrepresentations was not reasonable, and "the plaintiffs should not recover." Massey Automotive, Inc. v. Norris, 895 So.2d 215, 220 (Ala. 2004) (quoting Torres v. State Farm Fire & Casualty Co., 438 So.2d 757, 759 (Ala. 1983)). Thus, this reasonable reliance inquiry is virtually identical to the above analysis regarding discovery of fraud claims for statute of limitations purposes, and its outcome should likewise favor the Non-Diverse Defendants.

As stated above, Plaintiff advances a variety of allegations specially designed to avoid a finding that he should have discovered the Non-Diverse Defendants' alleged misrepresentations upon receiving his loan documents -- a finding that would negate the reasonableness of his reliance upon said misrepresentations. (See Plaintiff's Complaint, ¶¶ 12-22). Unfortunately for Plaintiff, however, his loan documents *do*, in fact, contain language at odds with the Non-Diverse Defendants' alleged misrepresentation and, as such, *do* negate the reasonableness of any reliance thereon. (See Ex. D).

Specifically, Plaintiff's loan documents provided more than enough information for him to determine whether refinancing prior debt would save him money and whether purchasing credit insurance was a good deal. (See id.). Similarly, Plaintiff's loan documents fully disclosed that purchasing credit insurance was not required to obtain credit and that such insurance could be cancelled within fifteen days of the loan for a full refund. (See id.). Given these disclosures, "plaintiff[] could not believe that the purchase of credit insurance improved [his] chances for loan approval" or, in turn, his credit score/rating. (Ex. F). Thus, Plaintiff did not reasonably rely upon the Non-Diverse Defendants' alleged misrepresentations, and his fraudulent misrepresentation claims against said Defendants necessarily fail as a matter of law.

### 4. Plaintiff's Fraudulent Suppression Claims Against the Non-Diverse Defendants Fail as a Matter of Law.

Plaintiff's fraudulent suppression claims against the Non-Diverse Defendants similarly fail as a matter of law. At the outset, such claims are completely negated by Plaintiff's loan documents, which, as demonstrated above, put Plaintiff on notice of the information allegedly suppressed. Moreover and as demonstrated in detail below, the Non-Diverse Defendants had no duty to disclose the information allegedly suppressed.

Fraudulent suppression claims such as the one at hand require a showing that the defendant in question had a duty to disclose the suppressed facts. Ex parte Ford Motor Credit Co. v. Adamson Ford, Inc., 717 So.2d 781, 785-86 (Ala. 1997) (citing Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 63 (Ala. 1996); Gewin v. TCF Asset Mgmt. Corp., 668 So.2d 523 (Ala. 1995)). In the absence of a special confidential relationship or other special circumstances, the general creditor-debtor relationship does not impose a fiduciary duty requiring disclosure of certain information. Id. at 786-87 (citing Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985); Baylor v. Jordan, 445 So.2d 254 (Ala. 1984)). Where parties are engaged

in arms-length commercial transactions and are fully capable of protecting their own interests, "Alabama common law imposes no duty to disclose unless the information is requested." Id. at 787 (citing Gewin, supra; Altmayer v. City of Daphne, 613 So.2d 366 (Ala. 1993); Bama Budweiser of Montgomery, Inc. v. Anheuser Busch, Inc., 611 So.2d 238 (Ala. 1992)).

In fact, the Alabama Court of Appeals has previously addressed allegations similar to those advanced by Plaintiff and determined that a finance company cannot be held liable for suppression.  In Williams v. Norwest Financial Alabama, Inc., 723 So. 2d 97 (Ala. Civ. App. 1998), the plaintiff contended that defendant Norwest Financial Alabama, Inc. ("Norwest") committed fraud by failing to disclose to the plaintiff that financing alternatives existed which were less expensive than the complete refinancing of plaintiff's loans.  The plaintiff argued that the finance company required its customers to refinance existing loans rather than allowing them to obtain new and separate loans.  Id. at 104.  The trial court, however, concluded that those claims were not actionable under Alabama law, and, therefore, entered summary judgment in favor of the defendant.  On appeal, the Alabama Court of Civil Appeals affirmed.

At the outset, the Court held that "nothing prohibits the refinancing or consolidation of an existing loan with a subsequent loan." Id.  Next, the Court determined that Norwest had no duty to disclose the effects of an alternative to the refinancing of plaintiff's existing loan.  Specifically, the Court stated that:

> [N]o evidence exists that would give rise to a confidential relationship between the parties.  [Plaintiff] had previously dealt with Norwest on a number of occasions; however, prior business contact alone does not give rise to a confidential relationship. (citation omitted).  Nothing in the record indicates that the transaction complained of was anything other than an arm's length transaction between the parties.  Accordingly, we conclude that the summary judgment was properly entered in favor of Norwest on this count.

Id. Accord, Mitchell v. Industrial Credit Corp., 898 F. Supp. 1518, 1535 (N.D. Ala. 1995) (applying Alabama law and holding that a finance company did not have a duty to disclose to plaintiff that it "would profit from the sale of [credit] insurance or that [credit insurance] might be available elsewhere at a lower price."). In this matter, as in Williams, there is absolutely no evidence of a "special relationship" between the parties. Thus, the Non-Diverse Defendants had no duty to disclose the information allegedly suppressed, and Plaintiff's claims to the contrary fail as a matter of law.

> **5.      Plaintiff's Breach of Fiduciary Duties Claims Against the Non-Diverse Defendants Fail as a Matter of Law.**

Plaintiff cannot possibly assert a cause of action for breach of fiduciary duties against the Non-Diverse Defendants because no such duty existed between them. As demonstrated above, it is well settled that, in the absence of a special confidential relationship or other special circumstances, the general creditor-debtor relationship does not impose fiduciary duties on the creditor. Ex parte Ford Motor Credit Co. v. Adamson Ford, Inc., 717 So.2d 781, 786-87 (Ala. 1997)(citing Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985); Baylor v. Jordan, 445 So.2d 254 (Ala. 1984)). With that said, there is absolutely no evidence that Plaintiff and the Non-Diverse Defendants enjoyed a special confidential relationship, the likes of which would impose fiduciary duties on the latter. As such, Plaintiff's breach of fiduciary duties claims against the Non-Diverse Defendants necessarily fail as a matter of law.

> **6.      Plaintiff's Negligent and/or Wanton Hiring, Training, and Supervising Claims Against the Non-Diverse Defendants Fail as a Matter of Law.**

Finally, Plaintiff's negligent and/or wanton hiring, training, and supervising claims against the Non-Diverse Defendants fail as a matter of law. It is axiomatic that such claims can only be asserted against an **employer** in connection with the alleged misconduct of an employee.

See Bridges v. Principal Life Ins. Co., 141 F.Supp.2d 1337, 1340 n. 3 (M.D. Ala. 2001)(noting that claims of negligent supervision must necessarily be brought against the insurer and not against the insurer's agent). In the present action, however, the Non-Diverse Defendants were both individual employees of the corporate Defendants. As such, Plaintiff cannot possibly prevail on a claim for negligent and/or wanton hiring, training, and supervising against the Non-Diverse Defendants.

### E.    Plaintiff's Counsel Has Manipulated the Pleadings in this and other Like Matters In a Transparent Effort to Avoid Removal.

In addition to the procedural and substantive arguments for fraudulent joinder in the present action, it bears noting that Plaintiff's counsel has manipulated the pleadings in this and other like matters in a transparent effort to avoid removal. As demonstrated above, Plaintiff's counsel has filed numerous boilerplate lawsuits against Defendants in Mississippi, Tennessee, and Alabama. (See Ex. A). Though these lawsuits all involve loans from the same general time period, the Mississippi cases were filed a couple of years prior to the Alabama and Tennessee matters. In the Mississippi cases, Plaintiff's counsel filed complaints alleging that the plaintiffs were specifically told they had to purchase credit insurance in order to obtain their loans.[7] Several federal courts in Mississippi have since denied motions to remand and are now granting motions for summary judgment in these and other like matters because the plaintiffs' loan documents directly contradict this alleged misrepresentation. (See Ex. B).

As a result, Plaintiff's counsel has filed slightly different complaints in Alabama and Tennessee, alleging that plaintiffs in all of these cases were identically informed by non-diverse

---

[7] As an example of the complaints filed in Mississippi, submitted herewith as Exhibit "I" is a true and correct copy of the complaint filed in the lawsuit styled Edward Morgan, et al. v. American International Group, Inc., In the Chancery Court of Jones County, Mississippi, Second Judicial District, Laurel Division, Civil Action Number: 2002-1029.

defendants that purchasing credit insurance was a good deal, that it would improve their credit score and their chances of being approved for the loans in question, and that refinancing prior debt would be the best way for Plaintiff to save money.[8] (See Plaintiff's Complaint, ¶¶ 12, 14-15). Thus, it is apparent that Plaintiff's counsel has abandoned its previous boilerplate allegations and conjured up new boilerplate misrepresentations in an effort to avoid being directly contradicted by the express language of plaintiffs' loan documents. In fact, Plaintiff's counsel has even gone so far as to amend the few Mississippi lawsuits in which summary judgment has not yet been entered, eliminating the original contention and replacing it with the newly crafted allegation.[9]

---

[8] For an example of the allegations asserted by Plaintiff's counsel in the Tennessee matters, see the complaint filed in the lawsuit styled Beauty Robertson v. American International Group Inc. aka AIG Insurance, et al., In the Circuit Court of Shelby County, Tennessee; CT-4105-05., attached hereto as Exhibit "J".

[9] The Mississippi lawsuits that Plaintiff's counsel has amended in an attempt to avoid a finding of fraudulent joinder include: Brad Gatlin, et al. v. American International Group, Inc., et al., In the Chancery Court of Jones County, Mississippi, Laurel Division, Civil Action Number: CV-2002-1026; Edward Morgan, et al. v. American International Group, Inc., et al., In the Chancery Court of Jones County, Mississippi, Laurel Division, Civil Action Number: CV-2002-1029; Dorothy Corbin, et al. v. American General Financial Services, Inc., et al, In the Circuit Court of Washington County, Mississippi, Civil Action Number: CI2004-216; Stonewall v. American General Finance, Inc., et al., In the Circuit Court of Carroll County, Mississippi, Second Judicial District, Civil Action Number: 2004-0011CV2L; Freddie Graham, et al. v. American International Group, Inc., et al., In the Circuit Court of Bolivar County, Mississippi, First Judicial District, Civil Action Number: 2002-333; Alice Brown, et al. v. American International Group, Inc., et al., In the Circuit Court of Leflore County, Mississippi, Civil Action Number: 2002-0173-CICI; Doris Beaman, et al. v. American International Group, Inc., et al., In the Circuit Court of Sunflower County, Mississippi, Civil Action Number: 2002-0638-CI; Beatrice Jackson, et al. v. American International Group, Inc., et al., In the Circuit Court of Sunflower County, Mississippi; Civil Action Number: 2002-0640-CI.

As an example of the amended complaints filed in Mississippi, submitted herewith as Exhibit "K" is a true and correct copy of the amended complaint filed in the lawsuit styled Edward Morgan, et al. v. American International Group, Inc., In the Chancery Court of Jones County, Mississippi, Second Judicial District, Laurel Division, Civil Action Number: 2002-1029.

Set forth below is a comparison of the original allegation in the Mississippi matters and the new allegation, illustrating the effort by Plaintiff's counsel to both avoid remand and salvage these meritless lawsuits:

| Original Allegation | New Allegation |
| --- | --- |
| Contrary to law, Defendants required credit life insurance, credit disability, personal property insurance and/or other insurance in connection with their loans to Plaintiffs. These insurance products were represented by Defendants as a necessary part of the loan package, with all or some of these insurance products misrepresented by Defendants as a necessary prerequisite for the extension of the credit and receipt of the loan. (Ex. I, ¶ 10). | Contrary to law, Defendants fraudulently represented to Plaintiffs that if they purchased the credit life, credit disability and/or personal property insurance then they stood a better chance of getting approved for the loan requested. (Ex. K, ¶ 18). |

Given the above, it is clear that Plaintiff's counsel has manipulated the pleadings in the Alabama, Tennessee, and amended Mississippi lawsuits to avoid a finding that plaintiffs' loan documents contradicted, and thus provided notice of, their fraud claims at the time of the loan in question. Because such a practice will only be encouraged by remanding the present action, Defendants respectfully request that the Court deny Plaintiff's Motion to Remand.

**F.    Defendants Have Provided Sufficient Evidence to Support Their Contention that the Amount in Controversy Requirement is Satisfied in the Present Action.**

The amount in controversy in the present action exceeds $75,000 notwithstanding Plaintiff's refusal to specify damages. In his complaint, Plaintiff alleges that he has suffered monetary damages, that he "has suffered mental anguish and emotional distress," and that he "has otherwise been injured and damaged." (Plaintiff's Complaint, ¶ 26). Based on these alleged injuries, Plaintiff seeks a "judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus costs." (Id.)

Because Plaintiff seeks an unspecified amount of damages, Defendants are only required to show that "the amount in controversy more likely than not exceeds the jurisdictional requirement." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996). Defendants clearly satisfied this requirement in their Notice of Removal by citing an abundance of Alabama decisions involving similar claims wherein plaintiffs were awarded damages in excess of $75,000.[10] Federal courts in Alabama adjudicating similar claims have repeatedly

---

[10] See e.g. Jeter v. Orkin Exterminating Co., supra, ($2,000,000 punitive damages awarded in fraud and breach of contract matter); Johns v. A.T. Stephens Enterprises, Inc., 815 So. 2d 511 (Ala. 2001) ($150,000 punitive damage award in conspiracy to convert matter); Travelers Indemnity Co. of Illinois & Crawford & Co. v. Griner, 809 So. 2d 808 (Ala. 2001) ($200,000 punitive damage award in fraud and outrage matter); New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2000) ($100,000 punitive damage award in conversion and trespass matter); Sparks v. Cash America International, Inc., 789 So. 2d 231 (Ala. 2000) ($225,000 award of punitive damages in fraud and breach of contract matter); Cooper & Co. v. Lester, 832 So. 2d 628 (Ala. 2000) (punitive damage awards ranging from $178,538 to $250,000 in fraud action); Prudential Ballard Realty Co., Inc. v. Weatherly, supra, (award of $750,000 of punitive damages in fraud action); Oliver v. Town, 770 So. 2d 1059 (Ala. 2000) ($249,000 award of punitive damages in conversion action); Chrysler Corp. v. Schiffer, 736 So. 2d 538 (Ala. 1999) ($150,000 award of punitive damages in fraud and breach of contract matter); Life Insurance Company of Georgia v. Parker; supra, ($150,000 award of punitive damages in insurance fraud matter); Patel v. Patel, 708 So. 2d 159 (Ala. 1998) ($225,000 award of punitive damages in fraud and breach of contract matter); Talent Tree Personnel Srvs., Inc. v. Fleenor, 708 So. 2d 917 (Ala. 1997) ($1,500,000 award of punitive damages in fraud and breach of contract matter); American Pioneer Life v. Williamson, 704 So. 2d 1361 (Ala. 1997) ($750,000 award of punitive damages in fraud and breach of contract case); Union Sec. Life Ins. Co. v. Crocker, 709 So. 2d 1118 (Ala. 1997) ($1,000,000 award of punitive damages in insurance fraud matter); Life Ins. Co. of Georgia v. Johnson, supra, ($3,000,000 award of punitive damages in insurance fraud action); Hillcrest Center, Inc. v. Rone, 711 So. 2d 901 (Ala. 1997) ($94,000 award of punitive damages in fraudulent inducement action); First Commercial Bank v. Spivey, 694 So. 2d 1316 (Ala. 1997) ($500,000 award of punitive damages in fraud and breach of contract matter); Gallant v. Prudential Ins. Co. of America, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $33,000,000 in punitive damages); Ford Motor Co. v. Sperau, 708 So. 2d 111 (Ala. 1997) ($1,792,000 in punitive damages); Johnson v. Mercury Finance Co., CV-93-52, in the Circuit Court of Barbour County, Alabama, Clayton Division (plaintiff, buyer of used cars, alleged that defendant fraudulently failed to disclose a $1,000 discount for which defendant purchased the non-recourse note; jury awarded $90,000 in compensatory damages, and $50,000,000 in punitive damages, the award of punitive damages was remitted to $2,000,000.); Key v. Prudential Insurance Co., et al., CV-93-479, in the Circuit Court of Marshall County, Alabama (August 28, 1995) (the plaintiff alleged that the insurance agent misrepresented that no

acknowledged that the citation of analogous cases suffices to show that the amount in controversy more likely than not exceeds the jurisdictional requirement. See Owens, 289 F. Supp. 2d 1319 (after careful review of the cases cited by the defendant, the Court concluded that said defendant had sufficiently demonstrated that the amount in controversy requirement had been met.); Fowler, 256 F.Supp.2d at 1249 (same); Bullock, 165 F. Supp. 2d at 1259 (same).

---

additional premium payments would be required; jury awarded $25,000,000 in punitive damages.); Parham v. Foremost Insurance Co., 693 So. 2d 409 (Ala. 1997) (jury awarded $6,000 in compensatory damages, and $7,500,000 in punitive damages; the punitive damages were later remitted to $175,000.). Consequently, the amount in controversy requirement has been established.

    See e.g. New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2001) (awarding $100,000 in compensatory damages, the majority of which for mental anguish, in conversion action); Prudential Ballard Realty Co., Inc. v. Weatherly, 792 So. 2d 1045 (Ala. 2000) ($250,000 compensatory damage award, mostly attributable to mental anguish, in fraud matter); Jeter v. Orkin Exterminating Company, Inc., 832 So. 2d 25 (Ala. 2001) ($300,000 mental anguish awarded in fraud and breach of contract matter); Oliver v. Towns, 770 So. 2d 1059 (Ala. 2000) ($67,800 metal anguish award); New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2000) (in a conversion claim, more than half of the $100,000 award of compensatory damages was attributed to mental anguish); Sparks v. Cash America International, Inc., 789 So. 2d 231 (Ala. 2000) (in fraud and breach of contract claim, $50,000 of the $75,000.00 compensatory damage award was attributed to mental anguish); Liberty National Life Ins. Co. v. Caddell, 701 So. 2d 1132 (Ala. 1997) (awarding $50,000 in compensatory damages for mental anguish resulting from alleged conversion); Hare v. Mutual Savings Life, CV-94-529, 1997 WL 743899 (LPR JURY) (awarding $500,000 in compensatory damages for alleged insurance fraud where primary injury was emotional distress); Mallard v. Countrywide Funding Corp., CV-95-199, 1997 WL 743898 (LRP JURY) (awarding $1,000,000 in compensatory damages to two Plaintiffs for emotional distress caused by fraud); Ball v. ALFA Realty, Inc., CV-95-103, 1997 WL 850611 (LRP JURY) (awarding $100,000 in compensatory damages for emotional distress suffered as a result of fraud); Norwood v. Glen Lanes Realty Co., CV-96-391, 1997 WL 996325 (LRP JURY) (awarding $200,000 in compensatory damages for emotional distress resulting from fraud); Gallant v. Prudential Ins. Co. of America, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $430,000 in compensatory damages for alleged insurance fraud); Sperau v. Ford Motor Co., CV-91-34, 1994 WL 180700 (LRP JURY) (awarding $4,492,000 in compensatory damages to four Plaintiffs for emotional distress allegedly caused by fraud). Consequently, the amount in controversy requirement is easily satisfied in the case at hand.

Relying on cases such as <u>Bennett v. American Medical Security</u>, Civil Action No. 02-D-120-N (M.D. Ala. Feb. 8, 2002) and <u>Fabritis v. United Wisconsin Life Insurance Co.</u>, Civil Action No. 02-T-820-N (M.D. Nov. 1, 2002), Plaintiff contends that Defendants failed to establish that the amount in controversy requirement has been met.  However, the only evidence that the <u>Bennett</u> defendants used to show that the damages in the case were likely to exceed the $75,000 requirement was a blanket assertion in a footnote that she had satisfied her heavy burden.  <u>Bennett</u>, No. 02-D-120-N, at *2.  Similarly, the only evidence that the <u>Fabritis</u> defendants used to show that the damages in the case were likely to exceed the $75,000 requirement was the unsupported assertion in their removal notice that Jury awards in cases on the same type of suits routinely exceed $75,000.  <u>Fabritis</u>, Civil Action No. 02-T-820-N, at *4.  By contrast, Defendants here have provided the Court with ample support for the proposition that the amount in controversy requirement has been met.  <u>See</u> <u>Owens</u>, 289 F. Supp. 2d 1319; <u>Fowler</u>, 256 F.Supp.2d at 1249; <u>Bullock</u>, 165 F. Supp. 2d at 1259.  As such, this Court should find that the amount in controversy requirement is satisfied in the present action.

### III. <u>CONCLUSION</u>

Based upon the foregoing, this Court has diversity jurisdiction over the present matter, and Plaintiff's Motion to Remand is due to be denied.

Respectfully submitted,

/s/ Matthew T. Mitchell_____
Robert H. Rutherford (RUT002)
David A. Elliott (ELL027)
Matthew T. Mitchell (MIT050)

Attorneys for Defendants

**OF COUNSEL:**

**BURR & FORMAN LLP**
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## CERTIFICATE OF SERVICE

I hereby certify that on February 24th, 2006, I electronically filed the foregoing Supplemental Opposition to Plaintiff's Motion to Remand with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Jere L. Beasley, Thomas J. Methvin, C. Lance Gould, Thomas Julian Butler, David A. Elliott, Robert H. Rutherford, Jeffrey M. Grantham, and John Thomas Aquina Malatesta.


Matthew T. Mitchell_____
OF COUNSEL